**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

HEISS PRODUCTS, INC., EAGLEY,      )
INC., KECAM, INC., KJL             )
ENTERPRISES, INC, C. HILSTAD,      )
CORP., MURPHY TECHINAL SALES,      )
INC., AMROB ELECTRIC, LLC,         )
BEAULAND, INC., BRIAN KEVITT,      )
LLC, and INDUSTRIAL TECHNICAL      )
SALES, INC.,                       )
                                   )
      Plaintiffs,            )          CLASS ACTION
                                   )
v.                                 )
                                   )          CIVIL ACTION NUMBER:
                                   )
                                   )
WATLOW ELECTRIC MANU-              )
FACTURING COMPANY,                 )
                                   )
      Defendant.)

**<u>PLAINTIFFS' COMPLAINT</u>**

Plaintiff Heiss Products, Inc., Plaintiff Eagley, Inc., Plaintiff KeCam, Inc.,

Plaintiff KJL Enterprises, Inc., Plaintiff C. Hilstad Corp., Plaintiff Murphy Technical

Sales, Inc., Plaintiff Amrob Electric, LLC, Plaintiff Beauland, Inc., Plaintiff Brian

Kevitt, LLC, and Plaintiff Industrial Technical Sales, Inc. (collectively "Plaintiffs"

or "Named Plaintiffs"), by and through their attorneys of record, file this Complaint

on behalf of themselves individually and a class of those similarly situated. Plaintiffs

hereby allege as follows:

**I.      <u>INTRODUCTION</u>**

1.    This is a class action lawsuit brought by Plaintiffs, individually, and on behalf of a class of others similarly situated who were subject to the negligent or intentionally deceptive practices implemented by Defendant Watlow Electric Manufacturing Company ("Watlow"), and or the negligence of its executives, directors, or officers.

2.    The practices at issue involve Watlow's failure to fully fund commission pools as contractually required, and its failure to pay its independent outside sales force all monies owed from those commission pools.

3.    Plaintiffs and others similarly situated depended on Defendant to fully fund commission pools, pay its independent outside sales force all monies owed, and comply with the provisions of its Agency Agreements with Plaintiffs.

II.    **PARTIES**

4.    Defendant Watlow was incorporated in Missouri and its principal place of business is in Missouri.

5.    Plaintiff Heiss Products, Inc. ("Heiss") was incorporated in North Carolina, and at all relevant times, its principal place of business was in North Carolina.

6.    Plaintiff Brian Kevitt, LLC ("Kevitt") was incorporated in Minnesota (later Colorado), and at all relevant times, its principal place of business was in Minnesota and later, Colorado.

2

7.     Plaintiff Eagley, Inc. ("Eagley") was incorporated in Washington and at all relevant times, its principal place of business was in Washington.

8.     Plaintiff KeCam, Inc. ("KeCam") was incorporated in Texas, and at all relevant times, its principal place of business was in Texas.

9.     Plaintiff KJL Enterprises, Inc. ("KJL") was incorporated in New York, and at all relevant times, its principal place of business was in New York.

10.     Plaintiff C. Hilstad Corp. ("Hilstad") was originally incorporated in Illinois. It was later re-incorporated in Wisconsin and at all relevant times, its principal place of business was in Illinois and, later, in Wisconsin.

11.     Plaintiff Murphy Technical Sales, Inc. ("Murphy") was incorporated in Indiana, and at all relevant times, its principal place of business was in Indiana.

12.     Plaintiff Amrob Electric, LLC ("Amrob") was incorporated in New Hampshire, and at all relevant times, its principal place of business was in New Hampshire.

13.     Plaintiff Beauland, Inc. ("Beauland") was incorporated in Illinois, and at all relevant times, its principal place of business was in Illinois.

14.      Plaintiff Industrial Technical Sales, Inc. (Industrial) was incorporated in Texas, and at all relevant times its principal place of business was in Texas.

15.     No putative class member is a citizen of Missouri.

16.     The principal injuries caused by Defendant and sustained by the Named Plaintiffs and members of the putative class were incurred outside Missouri.

## III.   <u>JURISDICTION AND VENUE</u>

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Named Plaintiffs and the Defendant, complete diversity of citizenship between the putative class members and the Defendant, and the amount of controversy exceeds $75,000.

18.     This Court also has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because there are at least 100 class members in the proposed class, the matter in controversy exceeds $5 million, exclusive of interest and costs, and the proposed class includes members who are citizens of states other than Missouri.

19.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391 (a)(1) and (a)(3) because Defendant maintains its headquarters in this judicial district, conducts substantial business in this district, and is subject to personal jurisdiction in this Court.

## IV.   <u>FACTUAL ALLEGATIONS</u>

20.    Watlow designs and manufactures heating solutions consisting primarily of electric resistive heaters, temperature sensors, temperature and power controllers and supporting software—all the components of a thermal system.

21.    Watlow partners with customers to optimize thermal performance, decrease design time, and improve the efficiency of products and applications.

22.    For more than ten (10) years Watlow relied on a contracted salesforce to bring its products to market—that is—until March 2024.

23.    Throughout that period Watlow entered Agency Agreements with sales agent businesses ("Sales Agent" or "Sales Agents") across the country to solicit domestic and international sales orders for Watlow's products.

24.    The Agency Agreements were boiler plate contracts, not subject to negotiation by the Sales Agents, and the terms and conditions of each agreement were identical except for the territory assigned and the name of the Sales Agent.

25.    Each Agency Agreement contained a promise by Watlow to pay an amount of money for the sales generated by the Sales Agent.

26.    On or about February 2016, Plaintiffs each entered an Agency Agreement with Watlow.

27.    Plaintiff Heiss Products, Inc. was a member of the TSBU team, member of the WSES Sub Team, and not a member of the Semi Team.

28.     Plaintiff Brian Kevitt, LLC was a member of the TSBU team, member of the WWST Sub Team, and not a member of the Semi Team.

29.     Plaintiff Eagley, Inc. was a member of the TSBU team, member of the WWST Sub Team, and not a member of the Semi Team.

30.     Plaintiff KeCam, Inc. was a member of the TSBU team, member of the WSES Sub Team, and not a member of the Semi Team.

31.     Plaintiff KJL Enterprises, Inc. was a member of the TSBU team, member of the WNES Sub Team, and not a member of the Semi Team.

32.     Plaintiff C. Hilstad Corp. was a member of the TSBU team, member of the WMDW Sub Team, and not a member of the Semi Team.

33.     Plaintiff Murphy Technical Sales, Inc. was a member of the TSBU team, member of the WMDW Sub Team, and not a member of the Semi Team.

34.     Plaintiff Amrob Electric, LLC was a member of the TSBU team, member of the WNES Sub Team, and not a member of the Semi Team.

35.     Plaintiff Beauland, Inc.  was a member of the TSBU team, member of the WMDW Sub Team, and not a member of the Semi Team.

36.     Plaintiff Industrial Technical Sales, Inc. was a member of the TSBU Team, member of the Energy Process Team (WENP), and was not a member of the Semi Team.

37.    On or around March 31, 2024, Watlow terminated the Agency Agreements made the subject of this suit.

38.    Watlow hired an in-house sales force to replace the Named Plaintiffs and members of the putative class they seek to represent.

39.    For purposes of compensation, the Agency Agreements defined the Named Plaintiffs and members of the putative class as Watlow Agents ("Watlow Agents" or "Sales Agents").

40.    Collectively, Watlow Agents were defined as follows: The independent sales agents in North America that entered similar Agency Agreements with Watlow.

41.    All Watlow Agents are members of the TSBU Team, except those in the Semi Team.

   a.  The TSBU Team includes the following Sub-Teams: Energy Process Team (a.k.a. WENP), Midwest Team (a.k.a. WMDW), Northeast Team (a.k.a. WNES), South Team (a.k.a. WSES), and West Team (a.k.a. WWST).

### AGENT COMPENSATION UNDER THE CONTRACT

42.    Under the Agency Agreements it entered with the Named Plaintiffs and members of the putative class, Watlow was to establish and contribute money as accrued to a pool—the Team Commission Pool—primarily based on the contributions of each Watlow Agent.

43.    Watlow was to compensate the Sales Agents, in part, from the Team Commission Pool on a shared basis according to percentages assigned to each agent.

44.    The Team Commission Pool had three components: Base Commission Pool, Component 2 Commission Pool, and Component 3 Commission Pool.

    a.    Watlow was to fund the Base Commission Pool as a percentage of the Team Commission Pool. *E.g.*, 90 or 95% of the Team Commission Pool.

    b.    Watlow was to fund the Component 2 Commission Pool as a fixed percentage of the Team Commission Pool. *E.g.*, 5% of the Team Commission Pool.

    c.    Watlow was to fund the Component 3 Commission Pool as a fixed percentage of the Team Commission Pool. *E.g.*, 5% of the Team Commission Pool.

45.    As accrued, Watlow was to fund the Team Commission Pool by applying commission rates specified in the Agency Agreements to each Sales Agent's sales.

46.    After the commission rates were applied, Watlow could not later decrease those percentages to retroactively reduce the amount funded.

47.    Watlow could not change the terms of the Agency Agreement, including commission rates, without advanced notice to the Watlow Agents.

48.    The Sales Agents performed under their contracts with Watlow, relying on the commission rates set forth in those contracts, relying on Watlow to fully fund the Team Commission Pool, and relying on Watlow to compensate them based on the full value of the Team Commission Pool.

**WATLOW BREACHED ITS AGENCY AGREEMENTS BY FAILING TO FULLY FUND THE TEAM COMMISSION POOL**

49.    Watlow established and partially funded a Team Commission Pool in violation of the Agency Agreements entered with the Sales Agents.

50.    Under those agreements, for Customer account sales (individual or aggregated) that (a) were not an individual purchase order having an aggregate selling price of more than $1 million from an Engineering Procurement Construction (EPC) Customer account, (b) increased year-over-year, and (c) exceeded the highest annual sales for the previous three-year period, Watlow was to fund the Team Commission Pool applying a commission rate of 9% to the incremental portion of total sales that exceed the total sales in the previous year.

51.    Despite its admittedly risky nature, Watlow failed to fully fund the Team Commission Pool using the methodology in ¶ 48. *See also*, ¶ 111 ("[V]iew to OSE is risky, math will not add up. Unofficially changing Sch C, w/o their sign off.").

52.    For example, in 2023, sales for the OBS-CAT Parent Account totaled $25,040,241.45. The sales for that account in 2023 exceeded that in 2022, as well as the sales in 2020 and 2021. Watlow did not apply the 9% commission rate in 2023 to the incremental sales that year that exceeded the sales in 2022.

**WATLOW FAILED TO PAY ALL MONIES OWED UNDER THE AGENCY AGREEMENTS**

53.    Each Sales Agent was shorted their share of the underfunded amounts discussed *supra*, ¶¶ 47-50, and additional amounts discussed below.

54.    For the period 2016 through March 2024, Watlow failed to pay the Named Plaintiffs and members of the putative class all monies due from the Team Commission Pool.

55.    For January 1, 2024, through March 2024, the Team Commission Pool, including commissions from non-U.S. manufacturing, totaled at least $2,570,873.

56.    For 2024, Watlow breached the Agency Agreements when it failed to pay the Watlow Agents at least $668,186 owed from the Team Commission Pool or its component pools.

57.    For 2023, the Team Commission Pool, including commissions from non-U.S. manufacturing, totaled at least $11,302,325.

58.    For 2023, Watlow breached the Agency Agreements when it failed to pay the Watlow Agents at least $2,572,240 owed from the Team Commission Pool or its component pools.

59.    For 2022, the Team Commission Pool, including commissions from non-U.S. manufacturing, totaled at least $13,899,241.

60.    For 2022, Watlow breached the Agency Agreements when it failed to pay the Watlow Agents at least $2,718,947 they were owed from the Team Commission Pool or its component pools.

61.    For 2021, the Team Commission Pool, including commissions from non-U.S. manufacturing, totaled at least $13,052,396.

62.    For 2021, Watlow breached the Agency Agreements when it failed to pay the Watlow Agents at least $2,523,896 they were owed from the Team Commission Pool or its component pools.

63.    For 2020, the Team Commission Pool, including commissions from non-U.S. manufacturing, totaled at least $11,214,924.

64.    For 2020, Watlow breached the Agency Agreements when it failed to pay the Watlow Agents at least $2,012,165 they were owed from the Team Commission Pool or its component pools.

65.    For 2019, the Team Commission Pool, including commissions from non-U.S. manufacturing, totaled at least $11,833.083.

66.    For 2019, Watlow breached the Agency Agreements when it failed to pay the Watlow Agents at least $1,214,947 they were owed from the Team Commission Pool or its component pools.

67.    For 2018, the Team Commission Pool, including commissions from non-U.S. manufacturing, totaled at least $12,455,404.

68.    For 2018, Watlow breached the Agency Agreements when it failed to pay the Watlow Agents at least $800,511 they were owed from the Team Commission Pool or its component pools.

69.     Similarly, Watlow breached the Agency Agreements in 2016 and 2017 when it failed each year to pay the Watlow Agents all amounts they were owed from the Team Commission Pool or its component pools.

70.     Watlow failed to pay the Sales Agents more than $12,500,000 that was or should have been part of the Team Commission Pool.

71.     As a result of Watlow's breach of the Agency Agreements, the Named Plaintiffs each were underpaid in one or more periods, January 1, 2016, through March 2024.

72.     As a result of Watlow's breach of the Agency Agreements, each member of the putative class was underpaid in one or more periods, January 1, 2016, through March 2024.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this action on behalf of themselves and as a class action on behalf of the following proposed class (the "Class"). The Class definition is as follows:

> For the period January 1, 2016, through March 31, 2024, all Watlow Agents who were members of the TSBU Team entered similar Agency Agreements with Watlow.

74.     Plaintiffs reserve the right to modify or amend the definition of the Class as this litigation proceeds.

75.     Excluded from the Class are: (1) Watlow Agents who were members of the Semi Team; (2) Watlow Agents outside North America; and (3) Watlow Agents having a principal place of business in Missouri.

76.     The Named Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23 relative to Counts I-III.

77.     A class action is the only practicable means by which the Named Plaintiffs and unknown members of the Class can challenge the actions of Watlow.

78.     As set forth below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

79.     **Numerosity.** More than 100 Watlow Agents were affected by Watlow's actions during the relevant period, and the Class includes unknown members; thus, joinder is impracticable.

80.     **Commonality.** All entities comprising the Class were subject to the same Agency Agreement, and each was similarly affected on a pro rata basis by Watlow's practices and procedures concerning the Sales Agent commission pools and the paying out of those pools.

81.     The relief sought is common to all members of the Class.

82.     **Typicality.** The Named Plaintiffs were all members of the TSBU Team, not on the Semi Team; each was a member of a TSBU sub-team, WENP, WMDW,

WNES, WSES, or WWST; and all are members of the class or sub-class they seek to represent.

83.    The Named Plaintiffs' claims are typical of the claims of the proposed Class as a whole and the Named Plaintiffs and the putative class members suffered the same injury.

84.    Because the Named Plaintiffs and the proposed Class challenge the same practices, and Defendant applied those practices identically to the Named Plaintiffs and the proposed Class, Defendant will assert similar defenses. Moreover, the answer to the common questions above will determine the success of the Named Plaintiffs and every other proposed Class member's claims: if the Named Plaintiffs succeed in their claims that ruling will benefit every other member of the proposed Class.

85.    **Adequacy.** The Named Plaintiffs will fairly and adequately represent the interests of the proposed Class they seek to represent as they have no interests separate from, or in conflict with, those of the proposed Class. Counsel knows of no conflict among members of the proposed Class.

86.    **Superiority**. Certification of the proposed class is superior to other means for the fair, efficient, and economical presentation of evidence, and the adjudication of common questions of law and fact for the Named Plaintiffs, the proposed class, and Watlow  because (a) the Named Plaintiffs' individual claims

require resolution of the common question: whether Watlow underfunded the commission pools at issue; (b) the Named Plaintiffs' individual claims require resolution of the common question: whether Watlow paid all monies in the commission pools to Sales Agents according to the expressed and implied terms and conditions of the Agency Agreements; (c) the Named Plaintiffs' individual claims require resolution of the common question: whether Watlow breached its duty of good faith and fair dealing when calculating the commission pools and monies owed from those pools; and (d) the cost of proving (a) – (c) makes it impracticable for the Named Plaintiffs and members of the proposed class to control the prosecution of their claims individually.

87.     Furthermore, the pursuit of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of Watlow's conduct and the claims they may possess.

88.     **Predominance.** The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, because the focus of the litigation is on Watlow's conduct.

89.    The predominant questions of law and fact in this litigation include, but are not limited to, whether Watlow:

- Underfunded the commission pools from which the Named Plaintiffs and Class members were compensated;

- Breached its contract with the Named Plaintiffs and Class members;

- Breached the covenant of duty of good faith and fair dealing imposed on it;

- Negligently interpreted the contracts it entered with the Named Plaintiffs and Class members;

- Negligently administered the contracts it entered with the Named Plaintiffs and Class members;

- Negligently supervised those responsible for the interpretation and administration of those contracts; and,

- Was unjustly enriched when it compensated the Named Plaintiffs and Class members.

90.    Other questions of law and fact common to the Class include the proper method or methods by which to measure damages.

91.    **Adequacy of Counsel**. The Named Plaintiffs respectfully request that the undersigned be appointed as Class Counsel. The undersigned attorney has experience in class-action litigation involving complex civil rights matters in federal court and knowledge of the relevant constitutional law. Counsel and his firm also have the resources, expertise, and experience to prosecute this action. The

undersigned was most recently appointed class counsel in the matter, *Davis et al., v. Mar-Jac Poultry AL, LLC*, Case No. 6:18-cv-01433-LSC (N.D. Ala.).

92.    It appears that other persons who fall within the Class definition above are not presently pursuing similar litigation; therefore, the Named Plaintiffs and individual Class members are not seeking to control the prosecution of separate actions.

93.    Since the Named Plaintiffs and Class members seek only their pro rata share of damages, according to the percentages assigned by Watlow in the past, this proposed class action does not present any unique management difficulties.

## V.    <u>CAUSES OF ACTION</u>

### A.    COUNT I – BREACH OF CONTRACT *(On Behalf of the Named Plaintiffs and the Class)*

COMES NOW Plaintiffs, by and through undersigned counsel, and for Count I of their Petition against Defendant, state as follows:

94.    Count I is brought pursuant to Mo Rev Stat §§ 506.010(1) and or 516.120(1) (2023).

95.    The Named Plaintiffs incorporate by reference the preceding ¶¶ 4-91 as if more fully set forth herein.

96.    Watlow entered an Agency Agreement with each Named Plaintiff and each member of the putative class.

97.   The Agency Agreements governed the relationship between Watlow and each Named Plaintiff, including Sales Agent compensation.

98.   The Agency Agreements governed the relationship between Watlow and each member of the proposed Class, including Sales Agent compensation.

99.   The Agency Agreements were drafted by Watlow and are essentially identical in all respects material to this litigation.

100.   The Agency Agreements Watlow entered with the Named Plaintiffs and each Putative Class Member were legal, valid, and binding contracts.

101.   The Named Plaintiffs and each Putative Class Member complied with the terms and conditions of the Agency Agreements, and they have fulfilled their obligations thereunder.

102.   Watlow's failure each year to fully fund the Team Commission Pool breached the terms and conditions of the Agency Agreements it entered with the Named Plaintiffs and Putative Class Members.

103.   Watlow's failure each year to pay the Named Plaintiffs and Putative Class Members all monies owed from that pool was a breach of the terms and conditions of the Agency Agreements it entered with them.

104.   Watlow's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of the damages suffered by the Named Plaintiffs and Putative Class Members.

B. **COUNT II – B**REACH OF **I**MPLIED **C**OVENANT OF **G**OOD **F**AITH AND **F**AIR **D**EALING *(On Behalf of the Named Plaintiffs and the Class)*

COMES NOW Plaintiffs, by and through undersigned counsel, and for Count II of their Petition against Defendant, state as follows:

105. The Named Plaintiffs incorporate by reference each preceding ¶¶ 4-102, as if more fully set forth herein.

106. An implied duty of good faith and fair dealing was imposed on Watlow under the contracts it entered with the Named Plaintiffs and Class members.

107. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter —of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

108. Watlow's size, position, and product offering gave it a superior vantage point from which to offer contracts of adhesion to Sales Agents.

109. At some point Watlow recognized it derived its income from an ever-smaller customer base, and that it needed to keep "in control" its Sales Agents' commissions.

110.   Watlow's management set its target compensation for Sales Agents at $240,000 to $260,000. *See* Graph Below by Director of Sales, Rick Wilkening ("Wilkening"),



111.   However, under Watlow's Agency Agreements with its Sales Agents, as its "census" decreased its Sales Agents' compensation routinely increased exceeding target.

112.   Watlow breached the covenant of good faith and fair dealing it owed each Named Plaintiff and each Putative Class Member when Wilkening regularly collaborated with others in the organization about controlling Sales Agents' commission and it implemented strategies to secretly control those commission costs, including (a) various bad faith interpretations of ambiguous terms and conditions within the contract, (b) bad faith acts based on the silence of the Agency

Agreements, and (c) bad faith acts using its superior position; all to compensate Sales Agents less than otherwise owed under the Agency Agreements.

113.    Wilkening's notes below show Watlow intended to control commission costs by, including but not limited to, (a) unilaterally eliminating 9% commission rates; (b) reducing allocation percents by the percent equal to the expense reduction Watlow desired; and (c) changing the commission rates in Schedule C without Sales Agent's consent.

Problem statement:  Census is reducing for Sales team while revenue is increasing/holding steady so need to
  1) keep commission rate 'in control', capture productivity and reinvestment opportunities
    1a) strategic $$ to re-invest in channel (ie ISE, AMgt, Sales training, changing roles, etc)
  2) align to strategy of business/changing needs
    2a) align channel to selling std, focus on vital few, etc

| | Needs | | | |
| --- | --- | --- | --- | --- |
| Ways to reduce expense | Amt of Expense Recovery | Where in Process | Elimination of Placeholder/accrual | Optics |
| 1- Eliminate placeholders, don't payout at 9% - Reduce allocation percents by the percent equal to the amount we want to take out of expense. This results in less than 100% being paid out which will reduce expense. We wont have the accrual at year end to use for other purposes | high - variable | Sharing | completely eliminate | view to OSE is risky, math will not add up. Unofficially changing Sch C, w/o their sign off |

114.    To hide from the Sales Agents its commission control practices, Watlow did not report the total commission dollar amount for all Sales Agents comprising the Team Commission Pool.

115.    Instead, Watlow provided sales reports to Sales Agents only for their geographic area or Sub Team (e.g. WMDW) identifying only their sales and their commission on those sales attributable to the Team Commission Pool, and their share of compensation from the pool.

116.   When viewed collectively, the individualized sales reports evidence the total amount of money the Team Commission Pool included or should have included each year, and that the Sales Agents were underpaid.

117.   Watlow Agents discovered Watlow's failure to pay them all monies owed only after it had terminated their contracts, and they conferred amongst one another, compiling the individualized sales reports.

118.   The Named Plaintiffs and members of the Class have performed all, or substantially all the obligations imposed on them under the Agency Agreements.

119.   The Named Plaintiffs and members of the Class have sustained damages because of Watlow's breach of the covenant of good faith and fair dealing.

C.     **COUNT III – UNJUST ENRICHMENT** *(On Behalf of the Named Plaintiffs and the Class)*

COMES NOW Plaintiffs, by and through undersigned counsel, and for Count III of their Petition against Defendant, state as follows:

120.   The contracts Watlow entered with the Named Plaintiffs and Class members identify commission rates that are reasonable for the services they were to provide Watlow.

121.   The Named Plaintiffs incorporate by reference each preceding ¶¶ 47-91, 110, 112-115, as if more fully set forth herein.

122.   To the extent contracts Watlow entered with the Named Plaintiffs and Class members are silent as to terms and conditions it used to avoid paying the

22

Named Plaintiffs and Class Members for the services they provided, or avoid paying them reasonable value for those services, Watlow was unjustly enriched, and the Named Plaintiffs and Class members are entitled to *quantum meruit*.

123.   The Named Plaintiffs and members of the Class conferred a benefit on Watlow at their expense when they unknowingly performed sales work at Watlow's request for no compensation, or lesser compensation than reasonably owed.

124.   Watlow appreciated that benefit in the form of increased revenue from sales.

125.   Watlow retained that benefit under inequitable and unjust circumstances. See also, ¶¶ 110, and 112-115.

126.   Watlow should not profit or enrich itself inequitably and unjustly at the Named Plaintiffs' and the Class's expense and make restitution to them.

**WHEREFORE**, the Named Plaintiffs, individually and on behalf of the Class, request the Court grant the following relief:

A.   Certify that this lawsuit may proceed as a Class Action under Fed. R. Civ. P. 23.

B.   Appoint the Named Plaintiffs and their counsel to represent the Class.

C.   Restitution of all unpaid compensation resulting from the wrongs alleged herein in an amount to be determined at trial.

D.   Declare that Watlow has breached its expressed or implied contractual obligations by underfunding the Team Commission Pool and failing to pay all monies owed from that pool or its components.

E.      Award the Named Plaintiffs and Class damages according to proof.

F.      Award the Class prejudgment and post-judgment interest.

G.      Award the Class reasonable attorneys' fees and costs; and

H.      Afford the Class all additional relief to which Plaintiffs and other Class
        Members may prove themselves entitled.

                                          Respectfully submitted,

                                          /s/ Robert J. Camp
                                          Robert J. Camp
                                          Counsel for the Plaintiff

OF COUNSEL:
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205-314-0500