**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HEISS PRODUCTS, INC., EAGLEY, INC., KECAM, INC., KJL ENTERPRISES, INC. C. HILSTAD, CORP., MURPHY TECHNICAL SALES, INC., AMROB ELECTRIC, LLC, BEAULAND, INC., BRIAN KEVITT, LLC and INDUSTRIAL TECHNICAL SALES, INC. | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:25-cv-00091 (CDP) |
| vs. | ) ) | |
| WATLOW ELECTRIC MANUFACTURING COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT WATLOW ELECTRIC MANUFACTURING**
**COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION**
**TO DISMISS THE COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

Defendant Watlow Electric Manufacturing Company ("Watlow") moves pursuant to Rule

12(b)(6) to dismiss the complaint for failure to state a claim and pursuant to Rules 12(f) and 23(g)

to strike the class allegations, and in support thereof offers the following.

**PRELIMINARY STATEMENT**

Watlow is engaged in the business of providing thermal process solutions, products and

services, and the company designs, manufactures and provides, among other things, process

heaters, sensors, temperature, process and power controllers, and complete thermal systems for a

wide variety of industrial applications. Historically, in North America, in addition to its inside

sales employees, Watlow used an outside sales channel comprised of independent non-exclusive

sales agents to sell a wide variety of its products and services. Last year, Watlow moved away

from the North American independent sales agent model to selling its products and services exclusively through its in-house sales force. Compl. ¶ 38.

Plaintiffs were authorized Watlow sales agents. Their relationship with Watlow was governed by a contract, called the Agency Agreement.[1] (*See* Exh. 1 (filed under seal). The Agency Agreement's terms established that Plaintiffs were independent contractors. It also established the structure for the commissions that Watlow would pay sales agents. Although Plaintiffs mention the Agency Agreement throughout their Complaint and sue to "enforce" its terms, they did not attach the confidential contract to their Complaint. The express terms of the confidential contract gave Watlow considerable discretion to decide whether to award commissions for certain sales and, for commissionable sales to set the amount for various elements of that compensation. Importantly, at the front of Schedule C-1, which addressed the "calculation of total commissions earned," the contract provided: "Watlow may, *in its sole discretion*, vary the Commission rate to *ensure alignment with its strategic objectives*." (Id. at *i*.) The parties agreed that Watlow had broad discretion over various elements—and overall—to set commissions using the business's strategic objectives as a north star.

Watlow moves to dismiss the three counts of Plaintiffs' Complaint for failure to state a claim. Missouri law does not allow an unjust enrichment claim where the relationship is based in contract. The "good faith and fair dealing" count is not a separate cause of action under Missouri law, and Plaintiffs' complaint fails to identify actions contrary to the express terms of the contract. The breach of contract count must be assessed using the confidential Agency Agreement itself,

---

[1] This Court may consider the confidential Agency Agreement in ruling upon Watlow's motion to dismiss without converting it into a summary judgment motion because the agreement "is the sole basis for [Plaintiffs'] complaint, as it is the contract upon which [their] breach-of-contract claim rests. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791-92 (8th Cir. 2014).

which is incorporated by reference in the Complaint, and when that assessment is done, it is plain that Plaintiff fails to plead any conduct that would constitute a breach of the express terms of the contract. Moreover, to the extent Plaintiffs intend their random mentions of "negligence" in the Complaint to plead a tort cause of action, that is barred by Missouri's economic loss doctrine.

Watlow also moves to strike the class allegations here. Particularly when one assesses the contract that forms the basis of the putative class's claims, it is clear from the pleading that any trial of the "class" claims would be hopelessly mired in individual issues, such as Watlow's exercise of its contractual discretion regarding commission issues and each individual Plaintiff's knowledge and failure to give Watlow notice and an opportunity to cure in earlier years, thereby failing to mitigate their alleged damages.

In sum, the Complaint does not properly plead any cause of action, and even if it did, it certainly does not plead a class that could survive the rigorous scrutiny Rule 23 requires.

## ARGUMENT

I.    **THIS COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UNDER MISSOURI LAW.**

In deciding Watlow's 12(b)(6) motion to dismiss, this Court may consider Plaintiffs' allegations *and* any "documents necessarily embraced by the complaint." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012); *see also Zean v. Fairview Health Servs.*, 858 F.3d 520, 526-27 (8th Cir. 2017) (where complaint had conclusory allegations about what was allowed by contract, the trial court was right to consider on a motion to dismiss the contract, which refuted the allegations). Here, that includes the "Agency Agreement" that is attached as Exhibit 1 to Watlow's Motion. *See* note 1, *supra*. Dismissal is appropriate unless the Complaint and any documents incorporated therein contain "sufficient factual matter … to state a claim to relief that

3

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A.      **Plaintiffs' Unjust Enrichment Count Fails To State a Claim Under Missouri Law Because Plaintiffs Allege Their Relationship Was Governed by a Contract.**

Despite spending 22 pages of their Complaint detailing how their relationship with Watlow was defined by a contract purportedly governing how much Plaintiffs were to be paid for sales they solicited, Plaintiffs allege an unjust enrichment count in their Complaint. This is not allowed under Missouri law, which the Agency Agreement declares in all caps governs the contract. (*See* Exh. 1 at 11 ("THE VALIDITY, INTERPRETATION, AND PERFORMANCE OF THIS AGREEMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MISSOURI").)

Missouri law is clear, there can be no unjust enrichment count where the basis of the Complaint is a relationship governed by a contract:

> [W]e are guided by the unmistakable and clear dictate of Missouri law that a party cannot recover damages under the equitable theory of unjust enrichment where an express contract governed the issue in dispute between the parties. Specifically, a party "cannot recover under an equitable theory when it has entered in an express contract for the very subject matter for which [it] seeks to recover." Further, "[c]laims for money had and received and unjust enrichment are both founded upon equitable principles whereby the law implies a contract to prevent unjust enrichment." "It is a well-settled principle of law that implied contract claims arise **only where there is no express contract**."

*Charter Communications Operating LLC v. SATMAP Inc.*, 569 S.W.3d 493, 511 (Mo. App.—E.D. 2018) (citations omitted; emphasis in original); *see also Howard v. Turnbull*, 316 S.W.3d 431, (Mo. App.—W.D. 2010) ("If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract.").

Count III should be dismissed with prejudice for failure to state a claim under Missouri

4

law.

**B.**    **The "Breach of Implied Covenant of Good Faith and Fair Dealing" Count Fails to State a Claim Under Missouri Law.**

To begin with, Count II should be dismissed with prejudice because it does *not* state an independent cause of action under Missouri law. To the extent there is any breach of the implied covenant of good faith and fair dealing, the cause of action under Missouri law would for breach of contract, not anything else. As Judge Ross recognized in *W. Silver Recycling, Inc. v. Nidec Motor Corp.*, "'The implied duty of good faith and fair dealing is not a separate claim or divorced from the contract'" and "'the covenant cannot give rise to new obligations not otherwise contained in the contract's express terms.'" 601 F. Supp. 3d 448, 456 (E.D. Mo. 2022) (quoting *Meridian Creative All., LLC v. O'Reilly Auto. Stores, Inc.*, 519 S.W.3d 839, 845 (Mo. App.—S.D. 2017)).

In *W. Silver Recycling*, plaintiff alleged defendant violated the covenant by terminating its services under a contract. Judge Ross held that allowing such a claim to proceed to trial would "risk permitting the Covenant to give rise to new obligations not otherwise contained in the contract's express terms." *Id.* at 459 (citation omitted; cleaned up). Surveying Missouri law, the court held that "[t]his wealth of precedent clearly demonstrates that courts cannot rely on the Covenant to impose new obligations which go beyond the parties' express contractual duties." *Id.* at 457; *see also Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 466 (8th Cir. 2002) (applying Missouri law and holding that the implied covenant of good faith "cannot give rise to new obligations not otherwise contained in a contract's express terms"). Put differently, conduct consistent with a contract's terms cannot violate the covenant of good faith and fair dealing as a matter of law.

The Agency Agreement is wholly inconsistent with Plaintiffs' assertion that the contract simply requires Watlow to pay defined percentages into a common fund and then pay them out

5

*pro rata* to the independent Sales Agents without any discretion or decision making. Schedule C-1 of the Agency Agreement provides that:

> The Commission rate applicable to sales to Customers will be the lesser of the applicable Commission rate provided in Table A, Table B, or the rate provided in Table C, **subject to the following exceptions**:
> \* \* \*
> **Watlow may, in its sole discretion, vary the Commission rate to ensure alignment with its strategic objectives.**

(Exh. 1 at *i* (emphasis added).)

Moreover, as reflected in Table B of Schedule C-1, the contract gave Watlow *complete discretion* to determine the commission rate for at least two classifications of product or customer: (i) "Sales for the performance of non-recurring engineering work, including related engineering services, tooling, and materials used in prototyping and proof of concept," and (ii) "customer or product specific rate, taking into account certain additional considerations." (*Id.* at *iii*.) Table B also reflects that there is zero commission for "catalog house sales, Internet sales, and/or sales through other channels, as defined by Watlow from time to time, and considered House Accounts." (*Id.*) Similarly, there is zero commission for products "sold through other indirect channels (eg: distribution, resellers, etc.)." (*Id.*) The contract also gave Watlow complete discretion to set the commission rate, if any, for "High Material Content Products" where the material content as a percentage of selling price was 55% or more. (*Id.*) Because the contract upon which Plaintiffs base their claim expressly gave Watlow discretion—in deciding for certain sales, whether to pay commissions and, for commissionable sales, how much to pay—to consider and use its own strategic objectives in paying commissions, Plaintiffs cannot invoke the covenant of good faith and fair dealing to impose different duties on Watlow.

Even with respect to the commission "pools" Plaintiffs mention in their Complaint, the contract expressly gave Watlow considerable latitude and discretion; it was not bound to

exclusively apply a mathematical formula. For example, Schedule C-2 allowed Watlow to make the following adjustments:

- A "*Base Factor*" that "**Watlow assigns** to Agent based on Watlow's analysis of revenue growth over the previous 3-year period."
- A "*Geographical Adjustment*" that is "a percentage **determined by Watlow** based on available market data that takes into account how Agent's income may be affected by geographical factors," except that "**it will not be applied if** Agent's residence is based on preference and **not related to Watlow's business needs**."
- A "Team Leader Adjustment," which is "a percentage adjustment **determined by Watlow** that is applied to the Base Factor if Agent serves as a Team Leader."
- A "Special Assignment Adjustment" that is "a percentage adjustment **determined by Watlow** and applied to the Base Factor in 2016 and, **in Watlow's sole discretion**, in subsequent years, that is based on a comparison of the total Commission received by Agent for 2015 and the total commissions anticipated for Agent in 2016 and any subsequent years under this Agreement."

(*Id.* at *ii* (emphases added).)[2] And the contract even expressly gave Watlow absolute discretion to terminate the relationship with its independent sales agents at any time for any reason.

Missouri law does not allow Plaintiffs to use the covenant of good faith and fair dealing to rewrite the contract to include duties that contradict its express terms. As Judge Ross explained:

> Missouri law recognizes that "[s]ophisticated parties have freedom of contract—even to make a bad bargain." It appears to the Court that [plaintiff] is attempting to recover from what it now perceives as a bad bargain via a claim under the Covenant. … [T]he Covenant is not "an everflowing cornucopia of wished-for legal duties." … Allowing [plaintiff] to proceed to trial on this claim would risk permitting the Covenant to "give rise to new obligations not otherwise contained in a contract's express terms."

*W. Silver Recycling, Inc.*, 601 F. Supp. 3d at 459 (citations omitted).

Because the express terms of the contract contradict the duties Plaintiffs seek to impose on Watlow by using the covenant of good faith, this count should be dismissed with prejudice.

---

[2] The contract also gave Watlow unfettered discretion in determining whether a sales agent would receive a commission under its "split sales policy." (*See id.* at 6.)

**C.      Plaintiffs' Breach of Contract Count Fails to State a Claim as a Matter of Law.**

As one noted treatise has advised, "[i]n pleading the existence of an express written contract, the plaintiff … may set it forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect." 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1235. Plaintiffs have done none of these things. They allege that the Agency Agreements govern their claims and those of class members. (Compl. ¶¶ 97-98, 100.) But their breach of contract count—Count I—simplistically pleads that Defendant failed to "fully fund" the Team Commission Pool and that Plaintiffs were not paid "all monies owed from that pool," and that this was the breach of contract.

This vague pleading is insufficient to state a cause of action for breach of contract under Missouri law because it does not identify the specific contractual provisions at issue and the conduct that allegedly violated them. As Judge Limbaugh explained in a breach of contract case involving an insurance policy:

> "A party 'fails to state a claim for breach of contract [if] it does not set out [the claimant's] rights or [the defendant's] obligations under the contract.'" *Reitz v. Nationstar Mortg., LLC,* 954 F.Supp.2d 870, 884 (E.D.Mo.2013) (quoting *Trotter's Corp. v. Ringleader Restaurants, Inc.,* 929 S.W.2d 935, 941 (Mo.App.1996)). "Vague references to unspecified 'agreements' are insufficient to state a claim for breach of contract." *Id.* (citations omitted).
>
> Here, plaintiffs' complaint fails … to identify the provisions of the policy that allegedly provide coverage for their loss. The motion to dismiss will be granted because plaintiffs failed to identify the rights and obligations of the parties under the insurance policy.

*Debord v. Nat'l Lloyds Ins. Co.*, 2015 WL 1526088, at *1–2 (E.D. Mo. Apr. 2, 2015).

Beyond the simple failure to plead the contractual provisions and the conduct that allegedly constitutes breach, Plaintiffs' breach of contract count fails as a matter of law when the Court considers the actual terms of the contract. The Agency Agreements are effectively incorporated by

8

reference in Plaintiffs' Complaint, and this Court may consider the terms of these contracts without turning this motion into a summary judgment motion. (*See supra* at 2 n.1.) Thus, the Court must look to the specificity of the contracts, which provide: **"Watlow may, in its sole discretion, vary the Commission rate to ensure alignment with its strategic objectives."**

As noted above, Schedule C-1, which relates to the calculation of commissions, gave Watlow broad discretion over numerous elements of agents' commissions. Plaintiffs' attempt to plead that Watlow's exercise of that discretion in furtherance of its business objectives somehow breached the contracts is insufficient as a matter of law. Plaintiffs were well aware of the numerous contractual provisions giving Watlow "sole discretion" and freely entered into these contracts. They cannot now escape the bargain they made just because they no longer like it. *R&R Land Development LLC v. American Freightways, Inc.*, 389 S.W.3d 234, 243-44 (Mo. App.—S.D. 2012) (Courts will not reallocate risks parties assigned in contract, and the freedom of contract includes freedom to make a disappointing bargain). Count I should be dismissed.

D.     **Plaintiffs' Allegations of "Negligence" Fail To State a Claim as a Matter of Law.**

Although Plaintiffs do not plead a separate "count" in negligence, they have peppered their Complaint with variations of the word. (*See, e.g.*, Compl. at ¶¶ 1, 89 ("negligently interpreted the contracts," "negligently administered the contracts," "negligently supervised those responsible").) This Court should dismiss with prejudice all allegations of "negligence" because Missouri law does not recognize a cause of action for negligence where, as here, the claim made by parties to a contract is purely for economic loss. In reversing a judgment in favor of a lessee of drilling equipment on a negligent misrepresentation claim, the Eighth Circuit held that Missouri's economic loss doctrine barred the claim, observing that "[i]n effect, '[a]llowing [plaintiff] to maintain a negligent misrepresentation claim at this point would rewrite the parties' contract and

reallocate the risk of loss.'" *Graham Constr. Servs., Inc. v. Hammer & Steel Inc.*, 755 F.3d 611, 617 (8th Cir. 2014) (citations omitted). As the court explained, "Under Missouri law, '[r]ecovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence.'" *Id.* at 616 (citation omitted); *see also Café Agave, Inc. v. Crown Valley Winery, Inc.*, 2025 WL 436058 (E.D. Mo. Feb. 7, 2025) (dismissing tort counts in suit alleging breach of a manufacturing contract, holding that "the economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature") (Limbaugh, J.); *Captiva Lake Investments, LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. App.—E.D.) (same); *cf.*, *Allen v. Forney Indus., Inc.*, 2023 WL 406165, at *5-*6 (Mo. App.—W.D. Jan. 25, 2023) (Missouri's economic loss doctrine bars recovery in tort for purely pecuniary losses where the injury results from breach of a contractual duty; holding that the doctrine barred not only negligence claims, but also unjust enrichment claim).

Plaintiffs' "negligence" allegations should be dismissed with prejudice.

II.     **THIS COURT SHOULD STRIKE THE CLASS ALLEGATIONS BECAUSE IT IS OBVIOUS FROM THE COMPLAINT THAT THIS CASE CANNOT MEET THE CLASS CERTIFICATION REQUIREMENTS OF RULE 23.**

Rule 23 directs district courts to consider the issue of class certification "[a]t an early practicable time" and specifically authorizes courts, when appropriate, to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(c)(1)(A), 23(d)(1)(D). Similarly, Rule 12(f) allows a court to "strike from a pleading" any "impertinent … matter." Fed. R. Civ. P. 12(f). As the Eighth Circuit has held, these rules together empower courts to "strike class-action allegations prior to the filing of a motion for class certification." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091-92 (8th Cir. 2021)

10

(holding that it was an abuse of discretion for district court to deny motion to strike where it was apparent from the pleadings a class could not be certified due, in part, to "the significant number of individualized factual and legal issues"). Where it is "apparent from the pleadings that [a proposed] class cannot be certified," the corresponding class allegations "bring 'impertinent' material into the pleading" and may be "stricken at the pleading stage." *Id.* at 1092 (citation omitted). *See also Thompson v. Vintage Stock, Inc.*, 2024 WL 492052, at *9 (E.D. Mo. Feb. 8, 2024) (Clark, C.J.) (it is sensible to strike class allegations at the pleading stage if they obviously could not be certified because otherwise the defendant would be required to mount a defense against unsustainable claims).

In response to a motion to strike class allegations, "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements are satisfied or that discovery is likely to produce substantiation of the class allegations." *Bennett v. Nucor Corp.*, 2005 WL 1773948, at *2 n.2 (E.D. Ark. July 6, 2005) (citation omitted); *see also Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (Jackson, J.) (citing *Bennett* with approval in discussion standards for motions to strike class allegations). Plaintiffs cannot meet this burden here.

## A.    Common Issues Do Not Predominate Over Individualized Issues.

The predominance inquiry of Rule 23(b)(3) "requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013). The predominance requirement is a demanding" one. *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 776 (8th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). It is not satisfied by showing merely that "there is *a* common question of law or fact, as there is no predominance if

11

'individual questions … overwhelm the questions common to the class.'" *Ebert*, 823 F.3d at 478-79 (citation omitted).[3] *See also Kraetsch v. United Service Automobile Ass'n*, 2015 WL 1457015, at *5 (E.D. Mo. Mar. 30, 2015) (Jackson, J.) (granting motion to strike class allegations in putative class action alleging breach of an insurance contract because individual issues predominated).

Ultimately, each individual Plaintiff's claim here is that in each year over the last ten years, it was paid less in commissions than it was entitled to receive under the Agency Agreement. But as demonstrated above, the express terms of the contract itself gave Watlow considerable latitude in determining whether, for certain sales, to pay commissions and, for commissionable sales, what amount of commission it would pay. It also expressly provided that "Watlow may, in its sole discretion, vary the Commission rate to ensure alignment with its strategic objectives." (Exh. 1 at *i*.) This is not a mere damages issue—it goes to the *liability* question of whether each putative class member actually suffered a breach of contract. Any trial of this putative class action would devolve into hundreds of individual mini-trials with respect to each putative class member's commission

---

[3] Given the contracts' grants of discretion to Watlow in the determination of commissions, it is unlikely that Plaintiffs could even meet Rule 23(a)'s commonality requirement, which was tightened by the U.S. Supreme Court more than a decade ago in *Wal-Mart v. Dukes*, 564 U.S. 338, 349-50 (2011). There, Justice Scalia explained that a mere "common question" is not enough. Rule 23(a)(2) requires the class proponent to identify a "common contention" that "must be of such a nature that it is **capable of classwide resolution**—which means that determination of its truth or falsity will resolve an issue that is **central to the validity of each one of the claims** in one stroke." *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, (8th Cir. 2017) (emphasis added; quoting *Dukes*). The Eighth Circuit noted that establishing breach of contract in the case before it in *Webb* would require an examination of how defendant's conduct impacted each class member, making it doubtful the case could meet the *Dukes* commonality standard, and holding that it clearly could not meet Rule 23(b)(2)'s predominance requirement. *Id.* at 1156. Here, given the amount of discretion the contract gave Watlow on myriad issues impacting commissions, it is plain that the issue of breach cannot be tried on a classwide basis that would be central to the validity of each one of the class members' claims in one stroke. And beyond that, this issue plainly does not predominate over the remaining individual issues in this suit. *See Cody v. City of St. Louis*, 103 F.4th 523, 530 (8th Cir. 2024) ("Common questions are those where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, classwide proof," and the predominance requirement of 23(b)(3) is even more demanding) (cleaned up; citations omitted).

paid in each year in the class period, as well as the reasons why Watlow exercised its sole discretion to set the commission at that amount or to not provide commission on particular sales. Where a trial would require individualized determinations of all the facts surrounding each particular class member's payment received under a contract and whether it was reasonable, there can be no predominance. *In re State Farm Fire and Casualty Co.*, 872 F.3d 567, 576-77 (8th Cir. 2017); *Halvorson*, 718 F.3d at 779-80 (reversing certification where insurer's liability turned on whether each "claim payment was reasonable," which in turn required individual assessments of different injuries incurred, treatments received, and prices paid by each class member).

Notably, other individual issues would arise in the defense of these claims. For instance, Missouri law requires a party to a contract to mitigate his damages. *See, e.g., Richardson v. Colier Bldg. Corp.*, 793 S.W.2d 366, 375 (Mo. App.—W.D. 1990) ("The general rule is that '[d]amages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.'") (citation omitted); *cf., Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*, 13 F.4th 659, 672 (8th Cir. 2021) ("'Under the rule of mitigation of damages, one damaged through [the] alleged breach by another of some legal duty or obligation has to make reasonable efforts to minimize the resulting damage.'") (citation omitted). Here, each putative class member is a sales agent claiming not to have been paid all commissions due them under their contracts for nearly a decade. Watlow would be entitled, at trial, to introduce evidence, with respect to each class member, about their knowledge regarding commissions for each year, as well as whether each of them gave Watlow any notice under the contract of any potential breach and an opportunity to cure, which could have mitigated their alleged damages. The need to try defenses like this individually is an independent reason why any purported "common issue" cannot predominate here. Accordingly, the class allegations should be stricken.

13

## CONCLUSION

For the foregoing reasons, Defendant Watlow respectfully requests that the Court grant its motion to dismiss the Complaint with prejudice or, in the alternative, grant its motion to strike class allegations, or provide such further relief as the Court finds would be just and proper.

Respectfully submitted,

**DOWD BENNETT LLP**

By: */s/ James F. Bennett*
     James F. Bennett #46826MO
     J. Russell Jackson #65689MO
     James B. Martin #70219MO
     7676 Forsyth Blvd., Suite 1900
     St. Louis, MO 63105
     Telephone: (314) 889-7300
     Facsimile: (314) 863-2111
     jbennett@dowdbennett.com
     rjackson@dowdbennett.com
     jbmartin@dowdbennett.com

*Attorneys for Defendant Watlow Electric Manufacturing Company*

14

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 1, 2025, a copy of the foregoing was served via this Court's electronic filing system, which will send Notices of Electronic Filing to all counsel of record.


_____/s/ *James F. Bennett*___